UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTHONY PASSALAQUA and GLEN KLEIN,

                                   Plaintiff,

            -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY EXECUTIVE
STEVEN BELLONE, SUFFOLK COUNTY POLICE
COMMISSIONER GERALDINE HART, SUFFOLK
COUNTY PISTOL LICENSING BUREAU EXECUTIVE
OFFICER SGT. WILLIAM WALSH, SUFFOLK COUNTY
COMMANDING OFFICER OF THE PISTOL LICENSING
BUREAU LIEUTENANT MICHAEL KOMOROWSKI,
PISTOL LICENSING BUREAU POLICE OFFICER
BERNSTEIN, TOWN OF ISLIP, ANGIE CARPENTER,
TOWN SUPERVISOR, DIRECTOR OF AIRPORT SECURITY
KEVIN BURKE, ISLIP TOWN PERSONNEL DIRECTOR
ARTHUR ABBATE, AIRPORT COMMISSIONER SHELLY
LAROSE-ARKEN, SUFFOLK COUNTY PISTOL LICENSING
BUREAU INVESTIGATOR NICHOLAS LORUSSO and
SUFFOLK COUNTY POLICE DEPARTMENT DETECTIVE
SGT. MICHAEL FLANAGAN,,

                                   Defendants.

                                  19-cv-05738(SJF)(AKT)

**SUFFOLK COUNTY DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION PURSUANT TO FED.R.CIV.P. 12(c)**

DATED:      Hauppauge, New York
              June 10, 2020
                                Respectfully submitted,

                                  Dennis M. Cohen
                                  Suffolk County Attorney
                                  Attorney for Suffolk County Defendants
                                  H. Lee Dennison Building
                                  100 Veterans Memorial Highway
                                  Hauppauge, New York 11788

                                  By:  Arlene S. Zwilling
                                  Assistant County Attorney

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

RULE 12(c) STANDARD ...................................................................................................... 5

POINT I
PLAINTIFFS STATE NO COGNIZABLE § 1983 CLAIM ................................................ 6

    A.   The Suspension of Plaintiffs' Pistol Licenses Does Not
           Implicate the Second Amendment ................................................................. 6

    B.   The Suspension of Plaintiffs' Pistol Licenses Did Not
           Deprive them of Due Process ......................................................................... 9

    C.   The Proscription Against Plaintiffs Possessing Guns
           During Their License Suspensions Does Not Violate
           Constitutional Rights ..................................................................................... 10

    D.   Plaintiffs Are Not Protected by the Eighth Amendment ........................... 12

    E.   The Fifth Amendment is Not Applicable to Plaintiffs' Claims ................... 13

    F.   No § 1983 Claim Exists For Conversion, slander or Defamation ............... 14

POINT II
NO CLAIMS ARE STATED AGAINST BELLONE, HART, KOMOROWSKI,
BERNSTEIN AND LORUSSO SINCE PLAINTIFFS DO NOT ASSERT THAT
THEY PERSONALLY PARTICIPATED IN CONSTITUTIONAL VIOLATIONS ............... 15

POINT III
INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............... 16

POINT IV
PLAINTIFF MAKE OUT NO COGNIZABLE CLAIM FOR CONSPIRACY
TO VIOLATE THEIR CONSTITUTIONAL RIGHTS .......................................................... 19

CONCLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

*1256 Hertel Ave. Assocs., LLC v. Calloway*,
    761 F.3d 252 (2d Cir. 2014) .................................................................. 13

*Amore v. Novarro*,
    624 F.3d 522 (2d Cir. 2010) .................................................................. 16

*Aron v. Becker*,
    48 F. Supp. 3d 347 ................................................................................ 10

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ................. 16

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 ................................................................ 5

*Austin v. United States*,
    509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) ..................... 12

*Back v. Hastings On Hudson Union Free Sch. Dist.*,
    365 F.3d 107 (2d Cir. 2004) .................................................................. 15

*Baker v. McCollan*,
    443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433  (1979) ....................... 6

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ....................... 9

*Biganini v. Gallagher*,
    293 A.D.2d 603, 742 N.Y.S.2d 73 (2002) ............................................ 9

*Boss v. Kelly*,
    306 F. App'x 649 (2d Cir. 2009) ........................................................ 7, 8

*Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*,
    492 U.S. 257, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989) ................. 12

*Bryant v. New York State Educ. Dep't*,
    692 F.3d 202 (2d Cir. 2012) .................................................................. 9

*Castanza v. Town of Brookhaven*,
    700 F. Supp. 2d 277 (E.D.N.Y. 2010) ................................................. 13

*Ciambriello v. Cty. of Nassau*,
 292 F.3d 307 (2d Cir. 2002) ................................................................. 19

*City of Oklahoma City v. Tuttle*,
 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ........................... 6

*D.C. v. Heller*,
 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ......................... 7

*Dean v. Blumenthal*,
 577 F.3d 60 .......................................................................................... 17

*Dwares v. City of New York*,
 985 F.2d 94 (2d Cir. 1993) .................................................................... 19

*Fabrikant v. French*,
 691 F.3d 193 (2d Cir. 2012) .................................................................. 17

*Farina v. Metropolitan Transit Authority*,
 409 F.Supp.3d 173 (S.D.N.Y. 2019) ....................................................... 12

*Foster v. Haage*,
 1987 WL 16979 (S.D.N.Y. Sept. 10, 1987) .............................................. 14

*Garcia v. Does*,
 779 F.3d 84 (2d Cir. 2015) .................................................................... 17

*Grice v. McVeigh*,
 873 F.3d 162 (2d Cir. 2017) .............................................................. 16, 17

*Harlen Assocs. v. Inc. Vill. of Mineola*,
 273 F.3d 494 (2d Cir. 2001) .................................................................... 9

*Harlow v. Fitzgerald*,
 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ......................... 16

*Harrington ex rel. Harrington v. Cty. of Suffolk*,
 2009 WL 2567959 (E.D.N.Y. Aug. 17, 2009) ........................................... 18

*Henry v. County of Nassau*,
 2020 WL 1185283 (E.D.N.Y. Mar. 12, 2020) .......................................... 7, 8

*In Re Douglas L.B.*,
 44 Misc. 2d , 983 N.Y.S.3d 772 (Cty. Ct. Otsego Cty. 2014) ...................... 9

*Johnson El ex rel. Johnson v. DeProspo*,
　　2019 WL 6311882 (S.D.N.Y. Nov. 22, 2019) ................................................................8, 10

*Kachalsky v. Cty. of Westchester*,
　　701 F.3d 81 (2d Cir. 2012).................................................................................7, 8, 11, 13

*L-7 Designs, Inc. v. Old Navy, LLC*,
　　647 F.3d 419 (2d Cir. 2011) ............................................................................................5

*Leogrande v. Suffolk Cty.*,
　　2016 WL 889737 (E.D.N.Y. Mar. 9, 2016) .....................................................................17

*Littlejohn v. City of New York*,
　　795 F.3d 297 (2d Cir. 2015) ..........................................................................................15

*Malley v. Briggs*,
　　475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ................................................16

*Martino v. Nassau Cty. Police Dep't*,
　　66 A.D.3d 781, 887 N.Y.S.2d 204 (2009) .......................................................................10

*McClellan v. Smith*,
　　439 F.3d 137 (2d Cir. 2006) ..........................................................................................17

*McCrary v. Marks*,
　　2018 WL 4204244 (E.D.N.Y. Sept. 4, 2018) .................................................................6, 14

*Messerschmidt v. Millender*,
　　565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012) ................................................16

*Mishtaku v. City of New York*,
　　2015 WL 13002182 (S.D.N.Y. May 4, 2015).....................................................................7

*Mitchell v. Forsyth*,
　　472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ................................................17

*Monell v. Dep't of Soc. Servs. of City of New York*,
　　436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ....................................................3

*Moore v. Andreno*,
　　505 F.3d 203 (2d Cir. 2007) ..........................................................................................16

*Mullenix v. Luna*,
　　136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) .......................................................................18

iv

*Napolitano v. Ryder*,
  2019 WL 365710 (E.D.N.Y. Jan. 30, 2019) .................................................................8, 10

*Nash v. Nassau Cty.*,
  150 A.D.3d 1120, 52 N.Y.S.3d 670 (N.Y. App. Div. 2017) ...........................................9

*Pangburn v. Culbertson*,
  200 F.3d 65 (2d Cir. 1999)............................................................................................19

*Papaioannou v. Kelly*,
  14 A.D.3d 459, 788 N.Y.S.2d 378 (2005) .....................................................................7

*Pearson v. Callahan*,
  555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ............................................17

*Perros v. Cty. of Nassau*,
  238 F. Supp. 3d 395 (E.D.N.Y. 2017) ...........................................................................7

*Reed v. Medford Fire Dep't, Inc.*,
  806 F. Supp. 2d 594 (E.D.N.Y. 2011) .....................................................................6, 14

*Russo v. City of Bridgeport*,
  479 F.3d 196 (2d Cir. 2007) .........................................................................................17

*Salahuddin v. Goord*,
  467 F.3d 263 (2d Cir. 2006) .........................................................................................16

*Saucier v. Katz*,
  533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ..........................................18

*Simpson v. Town of Warwick Police Dep't*,
  159 F. Supp. 3d 419 (S.D.N.Y. 2016) .........................................................................12

*Smith v. Brown*,
  296 F. Supp. 3d 648 (S.D.N.Y. 2017) .........................................................................12

*Spanos v. City of New York*,
  2016 WL 3448624 (S.D.N.Y. June 20, 2016) ...............................................................9

*Sturm v. Alpha Recovery Corp.*,
  2020 WL 1140425 (E.D.N.Y. Mar. 6, 2020) .................................................................5

*Sykes v. James*,
  13 F.3d 515 (2d Cir. 1993)..............................................................................................6

*Thomas v. Roach*,

    165 F.3d 137 (2d Cir. 1999) ................................................................ 17

*Toussaint v. City of New York*,

    2018 WL 4288637 (E.D.N.Y. Sept. 7, 2018) .................................... 7

*Vaher v. Town of Orangetown, N.Y.*,

    916 F. Supp. 2d 404 (S.D.N.Y. 2013) ................................................ 7

*Viteritti v. Inc. Vill. of Bayville*,

    831 F. Supp. 2d 583 (E.D.N.Y. 2011) ............................................. 13

*von Hofe v. United States*,

    492 F.3d 175 (2d Cir. 2007) ............................................................. 12

*Washington v. Cty. of Rockland*,

    373 F.3d 310 (2d Cir. 2004) ........................................................ 6, 14

*Weinstein v. Krumpter*,

    386 F. Supp. 3d 220 (E.D.N.Y. 2019) ................................... passim

*White v. Pauly*,

    137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) ...................................... 18

*Zalaski v. City of Hartford*,

    723 F.3d 382 (2d Cir. 2013) ............................................................. 18

*Zellner v. Summerlin*,

    494 F.3d 344 (2d Cir. 2007) ............................................................. 16

## PRELIMINARY STATEMENT

The County of Suffolk, Suffolk County Executive Steven Bellone, Suffolk County Police Commissioner Geraldine Hart, Suffolk County Pistol Licensing Bureau Executive Officer Sgt. William Walsh, Suffolk County Commanding Officer of the Pistol Licensing Bureau Michael Komorowski, Pistol Licensing Bureau Officer Bernstein, Suffolk County Pistol Licensing Bureau Investigator Nicholas LoRusso and Suffolk County Police Department Detective Sgt. Michael Flanagan, defendants in this action pursuant to 42 U.S.C. § 1983 (collectively, "County defendants") brought by plaintiffs Anthony Passalacqua ("Passalacqua") and Glen Klein ("Klein") submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing the Complaint as against them.

This case is a companion case to another now pending before this Court, *Jennifer Nin and Diane Tritschler v. County of Suffolk et al.,* CV 19-cv-1546 (SJF)(AKT). The two cases involve many of the same facts and legal questions. The *Nin* case grows out of the termination of Jennifer Nin's employment as an airport security officer with the Town of Islip, and the temporary suspension of the Suffolk County pistol licenses held by Nin and her mother Diane Tritschler, as a result of a workplace incident in which Nin was involved. This case pertains to Passalacqua and Kleins' loss of their pistol licenses.

According to the Complaint in this case, Passalacqua, like Nin, was employed as an airport security officer by defendant Town of Islip. Klein is a retired New York Police Department detective (¶4, 5). They are partners in a business known as Front Line Training Center LLC ("Front Line") (¶47). Front Line was issued a Federal Firearms

License on October 1, 2015, and the license was subsequently renewed until October 1, 2021 (Exhibit B). [1]

In 2018, Nin, possessed a "patrol rifle," an AR-15 which she gave Passalacqua, her co-worker and boyfriend, when she was placed on administrative leave from her position (¶37; Exhibit E). Passalacqua learned that defendant Suffolk County Police Sergeant Michael Komorowski ("Komorowski") of the Pistol Licensing Bureau ("PLB")[2] had been trying to contact Nin, so he contacted Komorowski to find out what it was in reference to. Komorowski informed Passalacqua that he believed Nin was in possession of an illegal AR-15 "patrol rifle." Passalacqua told Komorowski that she had given him the weapon rifle (¶44). On December 12, 2018, defendant Suffolk County Police Sergeant Michael Flanagan ("Flanagan") went to Front Line, and stated that he was there to pick up Nin's weapon. Flanagan told Passalacqua that defendant PLB Investigator Nicholas LoRusso had determined that as a non-exempt peace officer, Passalacqua could not possess such a weapon under the SAFE Act (¶ 45, Exhibit E).[3] Flanagan then took five AR-15s from Passalacqua for which he gave him a receipt (¶45, 46; Exhibit C).[4]

---

[1] Notably, the complaint does not allege that Front Line had the license to operate as a gunsmith or firearms dealer required by New York Penal Law § 400.00(1) and (2).

[2] Pursuant to New York Penal Law §265.10, the licensing officer for pistol licenses in the five western towns of Suffolk County is the Suffolk County Police Commissioner. The PLB is the unit of the Suffolk County Police Department that handles licensing of individuals.

[3] McArthur Airport security officers are designated as peace officers pursuant to the first of three subsection 75s to New York Penal Law § 210. However, the subsection provides that their authority is "specifically limited to the grounds of the said airport" and further that "nothing in this subdivision shall be deemed to authorize such officer to carry, possess, repair or dispose of a firearm unless the appropriate license therefor has been issued pursuant to section 400.00 of the penal law."

[4] New York State classifies the AR-15s taken from Passalacqua, which are listed on Exhibit C, as assault weapons. See
https://www.governor.ny.gov/sites/governor.ny.gov/files/archive/assets/documents/Rifl

On December 19, 2019, the PLB sent Passalacqua a letter signed by Komorowski informing him that as a result of an investigation into his unlawful possession of weapons, his pistol license was suspended, and ordering him to surrender all of his weapons.  Klein received a similar letter from Komorowski, also dated December 19, 2018 (¶52, 53; Exhibits G, H).[5]  On January 14, 2019, defendant Town of Islip terminated Passalacqua's employment on the basis that he no longer met a necessary requirement for the job (¶55).

Although it is unclear whether it is included as part of plaintiffs' present claims, the Complaint also alleges that Klein's pistol license was previously removed and his weapons temporarily taken in December 2018 (¶ 64).  Plaintiffs attach to the Complaint a letter from Komorowski dated May 4, 2018 notifying Klein of the suspension, and defendant Sgt. Walsh's notification of reinstatement dated October 15, 2018 (Exhibits K and L)

The Complaint does not allege that defendants Suffolk County Executive Steve Bellone, Suffolk County Police Commissioner Geraldine Hart, PLB Executive Officer William Walsh, Officer Bernstein or Investigator LoRusso took any action toward Passalacqua or Klein.

The Complaint purports to set forth the following causes of action pursuant to 42 U.S.C.A. § 1983:

a) First-------for denial of plaintiffs' Second Amendment and due process rights.

b) Second----a claim against defendant County of Suffolk pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) for violation of plaintiffs' Second Amendment rights.

---

esthatAREclassifiedasassaultweapons.pdf.  Possession of an assault weapon is a felony. *New York Penal Law §§ 265.02.*
[5]      The letters, which are attached to the Complaint as Exhibits G and H, states that the licenses are suspended, and not revoked, as plaintiffs state in paragraphs 52 and 53.

c)   Third------for denial of plaintiffs' rights under the Fourth, Fifth, Eighth and Fourteenth Amendments due to the intentional violation of their Second Amendment rights based on the seizure of their weapons.

d)   Fourth----for denial of plaintiffs' Eighth Amendment rights.

e)   Fifth-------for conspiracy to violate plaintiffs' constitutional rights.

f)   Sixth-------for violation of plaintiffs' civil rights by conversion of their property.

g)   Seventh---for violation of plaintiffs' constitutional rights by defamation and slander.

As County defendants now explain, plaintiffs state no cognizable § 1983 claim against County defendants because they point to no conduct by County personnel that amounts to a violation of their constitutional rights. The suspension of their pistol licenses and the required transfer of their weapons to the Police Department during the suspensions did not transgress the Second Amendment or the due process guarantee. The Fifth and Eighth Amendments are irrelevant to both the suspension of a pistol license by a local government and the consequent prohibition against possessing weapons. Plaintiffs plead merely a single conclusory assertion in support of their conspiracy claim. Conversion, defamation and slander are low-level torts not cognizable under § 1983. In addition to plaintiffs' failure to allege a violation of a constitutional right, they also fail to assert any personal participation in the purported wrongdoing by most of the individual defendants. Last, individual defendants are protected from § 1983 liability by the doctrine of qualified immunity.

## RULE 12(c) STANDARD

Recently, this Court enunciated the standard to be employed in determining a

motion for judgment on the pleadings pursuant to Rule 12(c) as follows:

> In deciding a motion pursuant to Rule 12(c), the Court employs the
> same standard as in deciding a Rule 12(b)(6) motion to dismiss.
> *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). Therefore, to survive
> a motion pursuant to Rule 12(c), a complaint must contain "sufficient
> factual matter, accepted as true, to 'state a claim to relief that is plausible
> on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937,
> 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*,
> 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim
> is considered plausible on its face "when the plaintiff pleads factual
> content that allows the court  to draw the reasonable inference that
> the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678,
> 129 S. Ct. at 1949. The court must accept as true all factual allegations
> set forth in the complaint and draw all reasonable inferences in favor
> of the plaintiff. See *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*,
> 631 F.3d 57, 63 (2d Cir. 2011). Although factual allegations are assumed
>  to be  true,  this  principle  is  "inapplicable  to  legal  conclusions," or
> "[t]hreadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements." Iqbal, 556 U.S. at 678; see also *Twombly*,
> 550 U.S. at 555 (the court is "not bound to accept as true a legal
> conclusion couched as a factual allegation").

*Sturm v. Alpha Recovery Corp.*, 2020 WL 1140425, at *3 (E.D.N.Y. Mar. 6, 2020)

Furthermore, "[i]n deciding a motion for judgment on the pleadings, the court

considers the complaint, the answer, any written documents attached to them, and any

matter of which the court can take judicial notice for the factual background of the case." *Id.*

quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal

quotation omitted).

## POINT I
## PLAINTIFFS STATE NO COGNIZABLE
## § 1983 CLAIM

The foundation of all § 1983 claims is the alleged denial of an identified right guaranteed by the Constitution.  This is because as the Supreme Court has clarified, § 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere*." City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2242–43, 85 L. Ed. 2d 791 (1985) citing *Baker v. McCollan*, 443 U.S. 137, 140, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 n.3 (1979).  See also *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To state a valid claim under § 1983, "a plaintiff must show that the conduct in question deprived him of a right, privilege, or immunity secured by the constitution or the laws of the United States." *Reed v. Medford Fire Dep't, Inc.,* 806 F. Supp. 2d 594, 609 (E.D.N.Y. 2011) citing *Washington v. Cty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004).  Accord *McCrary v. Marks*, 2018 WL 4204244, at *2 (E.D.N.Y. Sept. 4, 2018).

All of plaintiffs' § 1983 claims are fatally flawed because they lack the underpinning of a constitutional violation.

**A.    The Suspension of Plaintiffs' Pistol Licenses Does Not Implicate the Second Amendment.**

In their first cause of action, plaintiffs appear to seek recovery for the suspension of their pistol licenses and seizure of weapons as a violation of their Second Amendment rights (¶67, 68).  Inarguably however, the Second Amendment is not offended by a pistol license officer's decision to suspend or revoke a license or the consequential proscription against possessing a handgun.

As a starting point, it is unquestionable that the Second Amendment does not bar all government action limiting the possession of firearms.  In the Second Circuit, the Second

6

Amendment right to bear arms is not a right to hold some particular gun. *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 230 (E.D.N.Y. 2019) citing *Boss v. Kelly*, 306 F. App'x 649 (2d Cir. 2009) quoting *Vaher v. Town of Orangetown, N.Y.,* 916 F. Supp. 2d 404, 429 (S.D.N.Y. 2013) (collecting cases).  In this regard, it is well settled that in the state of New York, "the possession of a handgun is a privilege, not a right." *Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395 (E.D.N.Y. 2017) quoting *Papaioannou v. Kelly*, 14 A.D.3d 459, 788 N.Y.S.2d 378 (2005) (citing cases).

To regulate the ownership and carrying of weapons, New York maintains a general prohibition on the possession of firearms without a license. *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012).  Section 400 of the Penal Law is the "exclusive statutory mechanism of the licensing of firearms" in the state of New York.  *Henry v. County of Nassau*, 2020 WL 1185283, at *5 (E.D.N.Y. Mar. 12, 2020) quoting *Kachalsky*, 701 F.3d at 85–86; *Mishtaku v. City of New York*,  2015 WL 13002182, at *4 (S.D.N.Y. May 4, 2015), *aff'd sub nom. Mishtaku v. Espada*, 669 F. App'x 35 (2d Cir. 2016). New York pistol licenses are limited to those who meet the designated requirements including being of good moral character and someone for whom "no good cause exists for the denial of the license." *Toussaint v. City of New York*, 2018 WL 4288637, at *4 (E.D.N.Y. Sept. 7, 2018).

Because it concerns the carrying of weapons in public, as distinct from possessing weapons inside the home, the "proper cause" requirement has been held to fall outside of the "core Second Amendment protections" identified by the United States Supreme Court in *D.C. v. Heller*, 554 U.S. 570, 592, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008).  *Kachalsky*,  701 F.3d at 94.  "[W]hile the state's ability to regulate firearms is circumscribed in the home,

'outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense.'" *Kachalsky*, 701 F.3d at 95.

Suspension and revocation of a pistol license are governed by subsection 11, which provides that "a license may be revoked and cancelled at any time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer..."  Because § 400.00 (11) "substantially relates to the pertinent government objective of limiting the possession of handguns to law abiding, responsible individuals and there is a reasonable fit between the objective and the law" the statute comports with the Second Amendment. *Weinstein* at 230-232. More generally, Courts in the Second Circuit have "repeatedly upheld" New York's firearm licensing regime under § 400 generally against Second Amendment challenges. *Napolitano v. Ryder*, 2019 WL 365710, at *8 (E.D.N.Y. Jan. 30, 2019) (citing cases).

Since in temporarily suspending plaintiffs' pistol licenses, the PLB was exercising its discretion under § 400.11(c), plaintiffs' rights under the Second Amendment were not transgressed by the suspensions.

Indeed, this Court recently noted the Court of Appeals for the Second Circuit has rejected the theory that there is a constitutional right to a handgun license in this state. *Weinstein*, 386 F. Supp. 3d at 231–32 citing *Boss v. Kelly*, 306 F. App'x 649 (2d Cir. 2009). See *Henry v. County. of Nassau*, 2020 WL 1185283, at *10 (E.D.N.Y. Mar. 12, 2020) citing *Weinstein*, at 232 (collecting cases) ("Furthermore, numerous courts in this Circuit 'have previously found that there is no constitutional right to a handgun license in New York State' "); *Johnson El ex rel. Johnson v. DeProspo*, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019).

**B.      The Suspension of Plaintiffs' Pistol Licenses Did Not Deprive Them of Due Process.**

Plaintiff's first cause of action also asserts that defendants' actions deprived them of their right to due process. They do not specify any particular conduct that supposedly offended the right or identify what process they were supposedly denied.  Nevertheless, any claim that they were deprived of some level of process in connection with their license suspensions is untenable because they lack a protected interest in the licenses.

A procedural due process claim "is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process*." Napolitano v. Ryder*, at *9 quoting *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).  Thus, the "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972).

Licensing officers however, are "vested with broad discretion in determining whether to issue or revoke a license." *Weinstein*, 386 F. Supp. 3d at 231 quoting *Nash v. Nassau Cty.*, 150 A.D.3d 1120, 1121, 52 N.Y.S.3d 670 (N.Y. App. Div. 2017).  This discretion extends to the suspension of licenses.  *In Re Douglas L.B.*, 44 Misc. 2d 241, 983 N.Y.S.3d 772 (Cty. Ct. Otsego Cty. 2014) citing *Biganini v. Gallagher*, 293 A.D.2d 603, 742 N.Y.S.2d 73 (2002).  The "broad significant discretion" entrusted to the licensing officer "precludes any legitimate claim of entitlement." *Toussaint*, at *7 quoting *Spanos v. City of New York*, 2016 WL 3448624 (S.D.N.Y. June 20, 2016), aff'd, 672 F. App'x 124 (2d Cir. 2017) at *2 (S.D.N.Y. June 20, 2016) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)).

Since a pistol license holder has no protected liberty or property interest in continuing to hold their license, they are not entitled to process before or after the license is suspended.  See, e.g. *Napolitano v. Ryder*, at *9 (noting that plaintiff has no protectable interest in maintaining their license that would entitle them to post-suspension hearing); *Johnson El ex rel. Johnson v. DeProspo*, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019) (plaintiff has no protected interest that entitles them to due process in connection with license revocation).

In fact, even if plaintiffs had a protected interest in their licenses, there still would be no due process violation in the suspensions because they have an adequate remedy at state law in the form of a proceeding pursuant to N.Y. CPLR Article 78.   *Johnson El ex rel. Johnson*, 2019 WL 6311882, at *4.  See *Aron v. Becker*, 48 F. Supp. 3d 347, 37–71 (N.D.N.Y. 2014) ("an aggrieved pistol permit applicant has well established recourse under N.Y. CPLR Article  78").  See also *Weinstein*, 386 F. Supp. 3d at 231 citing *Martino v. Nassau Cty. Police Dep't*, 66 A.D.3d 781, 781–82, 887 N.Y.S.2d 204 (2009) (adverse licensing decisions may be challenged in state court).

## C.   The Proscription Against Plaintiffs Possessing Guns During Their License Suspensions Does Not Violate Their Constitutional Rights.

In conjunction with the suspension of their pistol licenses, plaintiffs were instructed to temporarily transfer their handguns to the Police Department.[6]  In the third cause of action, they assert that their rights under the Fourth, Fifth, Eighth and Fourteenth Amendment rights were violated by what they term this "seizure" of their property.

---

[6] The complaint does not state whether plaintiffs had any handguns.  County defendants assume for purposes of the motion that they did.

10

However, no seizure occurred.  Plaintiffs were required to surrender their handguns by virtue of the complete prohibition against unlicensed persons possessing handguns that is set forth in N.Y. Penal Law § 400.00 (11)(c), which provides:

> In any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency as provided in subparagraph (f) of paragraph one of subdivision a of section 265.20 of this chapter.  In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any police officer or peace officer acting pursuant to his or her special duties is authorized to remove any and all such weapons.

The prohibition of § 400.00.11(c) has been held to comport with the Constitution. *Weinstein*, 386 F. Supp. 3d at 230–232 (§ 400.00.11(c) does not violate Second Amendment). See also *Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) (§ 400.00 licensing regime not contrary to Second Amendment); *Henry v. County of Nassau*, 2020 WL 1885283 at *10 (E.D.N.Y. March 12, 2020) (§ 400.11 not in conflict with Second Amendment).  Accordingly, no violation of plaintffs' constitutional rights is encompassed by the required surrender of their weapons.

As for the assault weapons taken from Front Line, possession of such weapons is illegal. *New York Penal Law §265.02*.  While N.Y. Penal Law §2.10(75) designates Town of Islip airport security officers as peace officers, the statute explictly limits their authority to the grounds of the airport and provides that "nothing in this subdivision shall be deemed to authorize such officer to carry, possess, repair or dispose of a firearm unless the appropriate license therefor has been issued pursuant to section 400.00 of the penal law." Passalacqua's status as an airport security officer does not exempt him from the

11

prohibition on posessing assault weapons.  Indeed, the statute does not permit airport security officers to carry even a legal handgun without a pistol license.

**D.     Plaintiffs Are Not Protected by the Eighth Amendment.**

In both the Third and Fourth causes of action, plaintiffs seek to recover under §1983 for alleged violations of their rights under the Eighth Amendment. They do not identify which clause(s) of the amendment they invoke.  Nevertheless, they do not appear to have any viable claim under the Eighth Amendment.

Because they do not claim to be convicted prisoners, they cannot rely on the cruel and unusual punishments clause.  *Smith v. Brown*, 296 F. Supp. 3d 648, 661 (S.D.N.Y. 2017) quoting *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 443 (S.D.N.Y. 2016) ('there is no viable claim under the Eighth Amendment's prohibition of cruel and unusual punishment because 'the Eighth Amendment applies only to convicted prisoners''').

Nor is the excessive fines clause available to them as foundation for this claim. Although the Complaint states that Passalacqua suffered "severe punishment," (¶ 76), it makes no mention at all of any fine, and a formally imposed fine is a necessary element of an excessive fines clause claim. *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 268, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989) (excessive fines clause was intended to limit only those fines directly imposed by, and payable to, the government). See also *Farina v. Metropolitan Transit Authority*, 409 F.Supp.3d 173, 193-94 (S.D.N.Y. 2019) *von Hofe v. United States*, 492 F.3d 175, 178 (2d Cir. 2007) (quoting *Austin v. United States*, 509 U.S. 602, 609-10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)) (prohibition against excessive fines pertains to "payments, whether in cash or in kind, as punishment for some offense.")

12

Additionally, to the extent that Passalacqua characterizes the termination of his employment as an excessive fine, it was certainly not a fine levied by the County since he was not employed nor terminated by the County.

**E.    The Fifth Amendment is Not Applicable to Plaintiffs' Claims.**

The third cause of action also includes a claim for the alleged violation of plaintiffs' Fifth Amendment right to due process. Like the Eighth Amendment claim, this claim is irremediably deficient on its face.  The due process clause of the Fifth Amendment does not apply to local governments or their employees, such as defendants. *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011) quoting *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 288 (E.D.N.Y. 2010) (the Fifth Amendment only applies to actions by the Federal Government.)  The takings clause cannot be urged as an alternative basis for the Fifth Amendment claim.  Assuming for purposes of argument that having one's personal property removed temporarily, as opposed to permanently, implicates the takings clause, this argument is nonetheless fundamentally deficient because plaintiffs have no right to possess handguns absent a license, *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012) and no protected property interest in their licenses. Accordingly, they had no property interest protected by the takings clause. *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252 (2d Cir. 2014) ("threshold question" in takings claim is whether plaintiff had property interest).

Furthermore, it was not County defendants that required plaintiffs to relinquish possession of their handguns during the license suspension. Rather, New York Penal Law § 400.00.11(c) requires that upon suspension or revocation of a license, the license holder must surrender all guns in their possession to the licensing authority.  *N.Y. Penal Law*

13

§ 400.00.11( c) ("In any instance in which a person's license is suspended or revoked …..such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered…").  County defendants are under a duty to enforce the New York Penal Law, which is all they were doing by requiring plaintiffs to temporarily give up possession of their weapons.

**F.      No § 1983 Claim Exists For Conversion, Slander or Defamation**

In their sixth and seventh claims, plaintiffs seek to proffer § 1983 claims for conversion and defamation/slander. Simply put, since there are no constitutional prohibitions against conversation and defamation or slander, no § 1983 claims can be based on those common law torts. *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 609 (E.D.N.Y. 2011) citing *Washington v. Cty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004). Accord *McCrary v. Marks*, 2018 WL 4204244, at *2 (E.D.N.Y. Sept. 4, 2018).  See *Foster v. Haage*, 1987 WL 16979, at *2 (S.D.N.Y. Sept. 10, 1987) (state law torts do not become constitutional claims just because they are committed by government official).

In any event, plaintiffs do not allege that County defendants made any statement, oral or written, which affected their reputations.

14

**POINT II**

**NO CLAIMS ARE STATED AGAINST BELLONE, HART,
KOMOROWSKI, BERNSTEIN AND LORUSSO SINCE PLAINTIFFS
DO NOT ASSERT THAT THEY PERSONALLY
PARTICIPATED IN CONSTITUTIONAL VIOLATIONS**

The Complaint contains no averment that defendants Bellone, Hart, Bernstein or LoRusso committed any constitutional violations alleged by plaintiffs.  This omission is critical for an individual can be held liable under § 1983 "only if that individual is 'personally involved in the alleged deprivation'" of the plaintiff's civil rights. *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004). Personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Id*.  The Complaint does not contain a single allegation that any of the individual defendants engaged in any of these four types of conduct.  Thus, in addition to plaintiffs' failure to pled violations of particular constitutional protections, the Complaint states no cognizable § 1983 claim against defendants Bellone, Hart, Bernstein and LoRusso because it does not assert their personal involvement.

## POINT III

### INDIVIDUAL DEFENDANTS ARE ENTITLED
### TO QUALIFIED IMMUNITY

Even if strictly speaking, individual defendants crossed a constitutional line in their dealings with plaintiffs, they nonetheless are insulated from personal liability by the doctrine of qualified immunity. Qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Accord, *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 1244–1245, 182 L. Ed. 2d 47 (2012) quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011). The qualified immunity standard is forgiving. *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010). Both the Supreme Court and the Second Circuit have emphasized that "[n]ormally, it is only the 'plainly incompetent or those who knowingly violate the law'— those who are not worthy of the mantle of the office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno*, 505 F.3d 203, 214 (2d Cir. 2007) quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

The doctrine's purpose has been described as "balanc[ing] two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform

16

their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' " *Leogrande v. Suffolk Cty*., 2016 WL 889737, at *5 (E.D.N.Y. Mar. 9, 2016) citing *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Thus, qualified immunity is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Leogrande*, 2016 WL 889737 quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Qualified immunity is available in two different sets of circumstances: where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). As to whether the right is clearly established, the "dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 92.

It is the Court's duty to determine if the relevant right was sufficiently established at the time of the alleged wrongdoing, for whether a right was clearly established at the pertinent time is a question of law. *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) citing *Dean v. Blumenthal*, 577 F.3d 60, 67 n. 6 (2d Cir. 2009). Rights must be clearly established in a "particularized" sense, rather than at a high level of generality; and such rights are only clearly established if a court can "identify a case where an officer acting under similar circumstances" was held to have acted unconstitutionally. *Grice v. McVeigh*,

17

873 F.3d 162, 166 (2d Cir. 2017) quoting *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017).  The law must be so clearly established with respect to the "*particular* conduct" and the "specific context" at issue that "every reasonable official would have understood that his conduct was unlawful." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (emphasis in original) (internal quotation marks omitted).  If the illegality of the challenged conduct would not be so apparent, officers are entitled to qualified immunity. See *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). "In short, if at least some reasonable officers in the defendant's position 'could have believed that the challenged conduct was within the bounds of appropriate police responses,' the defendant officer is entitled to qualified immunity." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 208, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)) (alterations omitted).

It would be an understatement to say that at the time plaintiffs' pistol licenses were suspended and temporary possession of their firearms taken, it was not clearly established that Passalacqua's employment as an airport security officer exempted him from the prohibition against possessing assault weapons away from the airport, or prohibited the suspension of plaintiff's pistol licenses.  Therefore, individual defendants are entitled to qualified immunity.  The same would be true even if this Court were now to hold as a matter of first impression that individual defendants' actions were unconstitutional. *Harrington ex rel. Harrington v. Cty. of Suffolk*, 2009 WL 2567959 (E.D.N.Y. Aug. 17, 2009), aff'd sub nom. *Harrington v. Cty. of Suffolk*, 607 F.3d 31 (2d Cir. 2010) (when court pronounces right for the first time, qualified immunity protects defendants from liability for earlier abridgements of the right).

18

Furthermore, since the alleged actions taken by individual defendants were objectively reasonable, they are protected by the defense of qualified immunity on that basis as well.

## POINT IV

### PLAINTIFFS MAKE OUT NO COGNIZABLE CLAIM
### FOR CONSPIRACY TO VIOLATE THEIR
### CONSTITUTIONAL RIGHTS

In their fifth cause of action, plaintiffs assert that that all defendants joined in a conspiracy to violate their constitutional rights.

To survive a motion to dismiss a §1983 conspiracy claim, a plaintiff must allege  (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).   ("Complaints containing only conclusory, vague, or general allegations that defendants have engaged in a conspiracy to deprive the plaintiff of their constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d 307 citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Paragraph 78, which alleges that "the defendants joined in a conspiracy to deny [plaintiffs'] Constitutional Rights (SIC) guaranteed them under the United States Constitution despite there being no criminal case ever pending against them" is the sole allegation of the Complaint relating to the purported conspiracy.   Plainly, this single

19

cursory allegation is wholly insufficient to make out a claim for conspiracy to violate civil rights.

## CONCLUSION

For the above reasons, County defendants' motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing the Complaint as against them should be granted.


Dated:   Hauppauge, New York
         June 8, 2020

                                        Dennis M. Cohen
                                        County Attorney
                                        Attorney for County Defendants
                                        100 Veterans Memorial Highway
                                        P.O. Box 6100
                                        Hauppauge, New York 11788

                              By:       */s/ Arlene S. Zwilling*
                                        Arlene S. Zwilling
                                        Assistant County Attorney

20