UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANTHONY PASSALACQUA and GLEN KLEIN,

                                 Plaintiffs,

-against-

COUNTY OF SUFFOLK, WILLIAM WALSH,
MICHAEL KOMOROWSKI, NICHOLAS LORUSSO
and MICHAEL FLANAGAN,

                                 Defendants.
------------------------------------------------------------------------X

**Docket No.:**
**19-cv-05738 (GRB)(SIL)**

**AMENDED VERIFIED COMPLAINT**

The plaintiffs, ANTHONY PASSALACQUA and GLEN KLEIN, by their attorneys, HARFENIST KRAUT & PERLSTEIN LLP, sue to redress the violation of plaintiffs' rights under the Constitution and Laws of the United States and complaining of the defendants, COUNTY OF SUFFOLK, WILLIAM WALSH, MICHAEL KOMOROWSKI, NICHOLAS LORUSSO and MICHAEL FLANAGAN, allege:

**JURISDICTION AND VENUE**

1. This is an action under 42 U.S.C. Section 1983 to redress the depravation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to plaintiffs by the First, Second, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America.

2. Jurisdiction is conferred on the Court by 28 U.S.C. Section 1343(3) which confers original jurisdiction on Federal District Courts in suits to redress the deprivation of rights, privileges and immunities as stated in Paragraph 1 hereof.

3. The plaintiffs demand a trial by jury.

AL/D489809/FL3460

## PARTIES

4. Plaintiff, Anthony Passalacqua ("Passalacqua"), was and still is a United States citizen and resident of the County of Suffolk and State of New York.

5. Plaintiff, Glen Klein ("Klein"), was and still is a United States citizen and resident of the County of Suffolk and State of New York.

6. Defendant, County of Suffolk ("Suffolk County"), was and is within the State of New York, and is within the territory of the United States and the Eastern District.

7. Defendant, Michael Komorowski ("Komorowski"), now retired, was employed as the Lieutenant and commanding officer of the Suffolk County Police Department's ("SCPD") Pistol Licensing Bureau ("PLB"), and during his employment was a policy maker for Suffolk County, and acted under color of authority.

8. Defendant, William Walsh ("Walsh"), now employed as a Lieutenant and the commanding officer of the PLB, was before his promotion to Lieutenant a Sergeant and the PLB's Executive Officer, and as such was and is a policy maker for Suffolk County, and acted and continues to act under color of authority.

9. Defendant, Michael Flanagan ("Flanagan"), now retired, was formerly employed as a Detective Sergeant with the SCPD and acted under color of authority.

10. Defendant, Nicholas LoRusso ("LoRusso"), was employed as a civilian firearms investigator with the PLB, and acted under color of authority.

## STATEMENT OF RELEVANT FACTS

**A.    Plaintiffs' Pistol Permits and other Firearm Licenses**

11. Passalacqua was issued a pistol permit in 1998 and continuously maintained the permit until the events alleged.

12. Passalacqua was employed as a Peace Officer and Airport Security Guard with the Town of Islip and provided security services at Long Island MacArthur Airport ("LIMA"), for which he was required, as a condition of his employment, to maintain his pistol permit.

13. Passalacqua also has several law enforcement related certifications, including as a firearms instructor, aerosol subject restraint instructor, defensive tactics instructor, taser instructor, general topics instructor, and successfully completed a course in using patrol rifles.

14. Klein retired from the New York City Police Department ("NYPD") as a detective on or about January of 2003, and maintained his pistol permit as a retired police officer. Klein could carry a firearm since the date of his employment with the NYPD in January of 1983.

15. Passalacqua and Klein own Front Line Training Center, LLC ("FLTC") at 1520 Ocean Avenue, Bohemia, New York, which provides courses in concealed carry firearm safety training, security guard certification and other related matters.

16. Passalacqua also was issued and maintains a Federal Firearms License ("FFL") for the operation of FLTC.

**B.    The Seizure of Patrol Rifles in Passalacqua's Possession**

17. Jennifer Nin ("Nin"), a non-party to this action, was, like Passalacqua, employed as a Peace Officer and Airport Security Guard by the Town of Islip and provided security services at LIMA.

18. On or about October 31, 2018, Nin was placed on administrative leave for a work related incident with a fellow peace officer, which occurred on October 30, 2018 and resulted in a separate but related lawsuit filed in this Court captioned *Jennifer Nin and Diane*

*Tritschler v. County of Suffolk, et al*. under Docket No. 19-cv-01546 (GRB) (SIL) (the "Nin Action").

19. Plaintiffs reference and incorporate herein the complaint filed in the Nin Action, inclusive of its attachments.

20. Because of the work-related incident, Nin was ordered by her superior to surrender her handgun and her pistol license, which permit was suspended by PLB on November 1, 2018, pending further investigation by the PLB.

21. Nin also had a patrol rifle - an AR-15, but after being placed on administrative leave, Nin surrendered her patrol rifle to Passalacqua, which weapon acquisition was recorded on Passalacqua's FFL License Sheets.

22. On December 10, 2018, Kevin Burke, a retired Lieutenant with the SCPD and the then Director of Airport Security for LIMA, filed a complaint with the SCPD Sixth Precinct against Nin for illegally having the patrol rifle.

23. Flanagan, a detective sergeant employed by the SCPD, was assigned the investigation and tried contacting Nin on December 10, 2018 and December 11, 2018, all with no success.

24. Upon information and belief, Nin was vacationing outside the country.

25. On December 11, 2018, Passalacqua, who was notified by Nin's mother of Flanagan's efforts to contact Nin, spoke with Flanagan and told Flanagan Nin no longer had the patrol rifle, the patrol rifle was in Passalacqua's possession, and the acquisition of the weapon was properly reflected on his FFL License Sheets.

26. On December 12, 2018, Flanagan and another police officer went to the FLTC and seized from Passalacqua the patrol rifle surrendered to Passalacqua by Nin, and four other AR-15s Passalacqua had inventoried on his FFL License Sheets.

27. Before the seizure of the five AR-15s from Passalacqua, Flanagan spoke with LoRusso, a civilian firearms investigator assigned to the PLB, who held himself out as an expert on matters involving gun laws.

28. According to a written report prepared by Flanagan, dated January 17, 2019: "Mr. Lorusso informed that although Anthony Passalacqua has a valid FFL, he does not possess a valid New York State Dealer and Firearms License in Suffolk County. … Therefore, Anthony Passalacqua is not authorized in Suffolk County to take assault weapons or pistols onto his FFL Acquisition/Disposition Sheets."[1]

29. Flanagan also wrote that LoRusso told him:

> Anthony Passalacqua is a Non-Exempt Peace Office for the Town of Islip LIMA, [and] his license to carry a firearm only lets him carry while on the LI MacArthur property and to and from the property when coming to work. He is not authorized to possess any assault weapon AR-15s outside his employment with LIMA and is not authorized to have the weapon on his FFL. If Anthony Passalacqua has any assault weapons he must surrender them or face criminal charges.

30. Flanagan relied on LoRusso's statements in seizing the AR-15s in Passalacqua's possession.

31. Flanagan's report concluded: "Anthony Passalacqua voluntarily surrendered all weapons in question to SCPD including the weapon previously possessed by Jennifer Nin. *This case remains Closed Non-Criminal*." (Italics added).

---

[1] Flanagan reports erroneously that FLTC's New York State Dealer and Firearms License was previously suspended. FLTC's application for the license was never approved by the PLB.

AL/D489809/FL3460

32. No criminal charges were filed against Passalacqua or Klein.

C. **Suspension of Passalacqua and Klein's Pistol Permits**

33. On December 19, 2018, a few days after Flanagan's seizures of the AR-15s, PLB suspended Passalacqua's pistol permit because "of an ongoing investigation regarding your unlawful possession of weapons."

34. On December 19, 2018, the PLB, issued a Suspension Notice identical to the one received by Passalacqua, which suspended Klein's pistol permit because of Passalacqua's possession of the five AR-15s.

35. The SCPD and PLB statutorily or constitutionally could not seize Passalacqua and Klein's handguns and other firearms (i.e., the five AR-15s and FLTC and Klein's rifles at his home for which he needed no license) and suspend their pistol permits for the reasons stated in the two suspension notices.

D. **Termination of Passalacqua's Employment**

36. On January 4, 2019, Passalacqua was fired from his employment as Peace Officer and Airport Security Guard by the Town of Islip.

37. Passalacqua was fired because the PLB's suspension of his pistol permit prevented him from meeting a requirement of his job title as a Peace officer and Airport Security Guard.

E. **PLB's Failure to Further Investigate the Alleged Charges Against Passalacqua and Klein**

38. Despite seizing Passalacqua's AR-15s and Klein's rifles and suspending Passalacqua and Klein's pistol licenses, PLB's investigations were never completed.

39. Upon information and belief, post-seizure of Passalacqua's AR-15s and Klein's rifles, PLB took no investigatory steps or measures about Plaintiffs.

AL/D489809/FL3460

40. Upon information and belief, PLB's investigatory officers never prepared a report for Komorowski, which would have permitted Komorowski, as PLB's commanding officer, to decide whether Passalacqua and Klein's pistol licenses should reinstated, suspended for a time certain as a monitoring period or punitive measure, or revoked.

41. PLB never rendered a final decision on the status of either Passalacqua or Klein's investigation and/or license suspension.

42. Upon information and belief, there is no time limitation for PLB to finish an investigation and render a determination.

43. Nor are pistol licensees under a suspension allowed to have a hearing, as hearings are only reserved for licensees with their pistol permits revoked.

44. While waiting for PLB to finish their investigations and render final determinations as to the statuses of Passalacqua and Klein's pistol licenses, Passalacqua and Klein's pistol licenses expired.

45. While PLB's rules let a pistol licensee apply to renew the license while under suspension, the renewal application will not be acted on, but merely placed in the investigator's file, as any new license would similarly be under suspension until a final determination is made.

**AS AND FOR A FIRST CAUSE OF ACTION**

46. That the acts and conduct alleged against Defendants in Paragraphs "1" through "45" are a denial of Passalacqua's rights under the Second Amendment, and to due process.

47. Based on the alleged facts, a pistol licensee, like Passalacqua, who has been accused of some misconduct purportedly justifying a restriction of his second amendment rights, is subject (i) to an unconstitutional seizure of his handguns and other firearms and initial suspension of the

AL/D489809/FL3460

licensee's pistol permit; and (ii) a post-suspension investigatory process by the County, SCPD and PLB that offers ineffectual due process safeguards to the pistol licensee.

48. Specifically, the investigative authorities have open-ended discretion, with little or no objective guidelines, for determining whether a pistol licensee, like Passalacqua, who has not been charged with a crime (i) should have his handguns and other firearms seized and pistol permit suspended in the first place; and (ii) following the initial license suspension should receive a license reinstatement, a continuation of the suspension for monitoring or punitive reasons, or a license revocation.

49. There is no requirement that a pistol licensee receive a hearing unless a license revocation is ordered.

50. There is no requirement that PLB's investigation be completed within a prescribed time; meaning the suspension can continue indefinitely, as with Passalacqua.

51. Passalacqua's firearms were seized and his pistol license was suspended without meaningful due process, which led to a violation of his constitutional rights and the termination of his employment with the Town of Islip as a Peace Officer and Airport Security Guard.

52. Passalacqua's firearms continue to remain seized and his license suspended without meaningful due process, which continues to lead to a violation of his constitutional rights.

53. Because of the foregoing, Passalacqua has sustained and continues to sustain injury and damages including loss of income, loss of pension, loss of medical benefits, suffered fear, shock, fright, emotional distress and embarrassment all to his damage for which the defendants are liable jointly and severally.

54. The Defendants are indebted to Passalacqua for an amount of money to be determined by a trier of fact for the constitutional rights violations of the Defendants.

AL/D489809/FL3460

## AS AND FOR A SECOND CAUSE OF ACTION

55. That the acts and conduct alleged against Defendants in Paragraphs "1" through "45" are a denial of Klein's rights under the Second Amendment, and to due process.

56. Based on the alleged facts, a pistol licensee, like Klein, who has been accused of some misconduct purportedly justifying a restriction of his second amendment rights, is subject (i) to an unconstitutional seizure of his handguns and other firearms and initial suspension of the licensee's pistol permit; and (ii) a post-suspension investigatory process by the County, SCPD and PLB that offers ineffectual due process safeguards to the pistol licensee.

57. Specifically, the investigative authorities have open-ended discretion, with little or no objective guidelines, for determining whether a pistol licensee, like Klein, who has not been charged with a crime (i) should have his handguns and other firearms seized and pistol permit suspended in the first place; and (ii) following the initial license suspension should receive a license reinstatement, a continuation of the suspension for monitoring or punitive reasons, or a license revocation.

58. There is no requirement that a pistol licensee receive a hearing unless a license revocation is ordered.

59. There is no requirement that PLB's investigation be completed within a prescribed time; meaning the suspension can continue indefinitely, as with Klein.

60. Klein's firearms were seized and his pistol license was suspended without meaningful due process, which led to a violation of his constitutional rights.

61. Klein's firearms continue to remain seized and his license suspended without meaningful due process, which continues to lead to a violation of his constitutional rights.

AL/D489809/FL3460

62. Because of the foregoing, Klein has sustained and continues to sustain injury and damages including fear, shock, fright, emotional distress and embarrassment all to his damage for which the defendants are liable jointly and severally.

63. The Defendants are indebted to Klein for an amount of money to be determined by a trier of fact for the constitutional rights violations of the Defendants.

**WHEREFORE:** Plaintiffs demand judgment against the Defendants:

A. Under 42 U.S.C. Section 1983 for compensatory damages in the amount to be determined by the triers of fact against the Defendants jointly and severally;

B. Against the individual Defendants for punitive damages in a sum to be determined by the triers of fact;

C. Reasonable attorneys' fees under 42 U.S.C. Section 1988 and this action's costs and disbursements; and

D. Such other and further relief as is considered proper.

Dated: Lake Success, New York
       July 24, 2025

Respectfully submitted,

HARFENIST KRAUT & PERLSTEIN LLP

By *Steven J. Harfenist*
Steven J. Harfenist
Andrew C. Lang
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
(516) 355-9600
sharfenist@hkplaw.com
alang@hkplaw.com

AL/D489809/FL3460

## ATTORNEY'S VERIFICATION

ANDREW C. LANG, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalty of perjury: I am an attorney at HARFENIST KRAUT & PERLSTEIN LLP, attorneys of record for Plaintiffs, JENNIFER NIN and DIANNE TRITSCHLER, I have read the annexed AMENDED VERIFIED COMPLAINT and know the contents of them, and the same are true to my knowledge, except those matters which are stated to be alleged on information and belief, and as to those matters, I believe them to be true. My belief, as to those matters not stated upon knowledge, is based upon facts, records, and other pertinent information in the firm's files. This verification is made by me because Plaintiffs are not presently in the county where I maintain my offices.

Dated: Lake Success, New York
       July 24, 2025

*Andrew C. Lang*
ANDREW C. LANG

AL/D489809/FL3460